**SO ORDERED.**

**SIGNED this 05 day of April, 2012.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

SRCR, LLC,

    DEBTOR.

CASE NO. 12-01339-8-JRL

CHAPTER 11

### ORDER

This matter came before the court on Park Sterling Bank's ("Park Sterling") motion for relief from the automatic stay and the debtor's motion for contempt and sanctions for violation of the automatic stay. A hearing was held on March 22, 2012, in Raleigh, North Carolina.

### BACKGROUND

The debtor, SRCR, LLC, is a North Carolina corporation engaged in the business of owning and leasing construction equipment. The debtor filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code on February 21, 2012. Member-manager J. Keith Stark ("Mr. Stark") has a 90% ownership interest in the debtor, with the remaining 10% belonging to Mr. Stark's wife. Virtually all of the debtor's business is with Cape Fear Paving, LLC and B&K Coastal, LLC, both of which are substantially owned by Mr. Stark ("sister corporations").

On June 7, 2007, the debtor executed a promissory note for the benefit of Park Sterling, pursuant to which the debtor borrowed $555,000.00. The promissory note obligated the debtor to make monthly payments of approximately $5,100.00. The debtor also executed a business loan agreement and an aircraft security agreement, pledging a Piper Navajo Airplane, Serial No. 31-8112036 ("airplane") as collateral for the debtor's obligation under the promissory note. On July 15, 2010, the debtor and Park Sterling entered into a change in terms agreement that extended the maturity date of the promissory note to July 15, 2013, and in conjunction with that agreement, the parties executed a second business loan agreement. Park Sterling is the current owner and holder of all of the aforementioned documents (collectively "loan documents"). As of the petition date, Park Sterling's claim was approximately $423,102.14.

On or about December 14, 2011, the debtor received a notice of default from Park Sterling, informing the debtor of its defaults under the loan documents and demanding that they be cured. The defaults were not cured, and on February 3, 2012, Park Sterling repossessed the airplane. Several weeks later on February 21, 2012, the debtor filed a petition for relief pursuant to chapter 11 of the Bankruptcy Code. After Park Sterling denied several requests for the return of the airplane, the debtor moved the court to hold Park Sterling in contempt and impose sanctions for violation of the automatic stay on February 27, 2012. On March 8, 2012, Park Sterling simultaneously filed a response to the debtor's motion for contempt and sanctions and a motion for relief from the automatic stay.

At the hearing, Mr. Stark testified that the airplane was necessary for his travel to prospective and active job sites of the debtor's sister corporations, i.e., the corporations that lease equipment from the debtor. Furthermore, Mr. Stark testified that given the current economic

2

climate, it has been necessary for the sister corporations to expand the geographic area in which they conduct business. While the vast majority of the airplane's flights were business-related, Mr. Stark admitted that he had used the airplane for personal reasons on various occasions. Mr. Stark also testified that at the time of the notice of default, the debtor was only fifteen days delinquent on its monthly payment to Park Sterling, and that the debtor has the present ability to come current on its payments. Park Sterling introduced a receipt from Oak Island Aviation, evidencing that when Park Sterling repossessed the airplane, it was required to pay $1,000.00 for an unpaid maintenance bill.

## DISCUSSION

### A. Motion for contempt and sanctions

The debtor contends that the repossessed airplane is property of the estate in bankruptcy, and because Park Sterling refused to turnover the airplane, it is in violation of the automatic stay pursuant to 11 U.S.C. § 362(a)(3). Furthermore, the debtor argues that a finding of contempt and imposition of sanctions are particularly appropriate given the extended delay between the debtor's demand for turnover and Park Sterling's motion for relief from the automatic stay. Park Sterling contends that the appropriate legal procedure for return of the airplane—having been repossessed prior to the petition date—is a motion for turnover pursuant to 11 U.S.C. § 542(a).

The jurisprudence in this district is clear that if a creditor refuses to turnover property that was repossessed prior to the petition date, the creditor must ensure that the issue of rightful possession is promptly placed before the court.[1] In most cases, creditors comply with this

---

[1] See 1 Keith M. Lundin, Chapter 13 Bankrupty § 75.1 (3d ed. 2000 & Supp. 2004), for a discussion of the current divide in the courts on how to proceed when a secured creditor repossesses collateral prior to the petition date. Although this particular text focuses on chapter

3

requirement by moving the court for relief from the automatic stay. In this case, the court finds that the issue was placed before the court in sufficient time so that sanctions will not be imposed against Park Sterling. Although Park Sterling did not file a motion for relief from the automatic stay until March 8, 2012, the court finds that Park Sterling could rely on the debtor's motion for contempt and sanctions as placing the issue of rightful possession of the airplane before the court.

**B. Motion for relief from the automatic stay**

Park Sterling claims that it is entitled to relief from the automatic stay pursuant to 11 U.S.C. § 362(d)(2). Section 362(d)(2) provides that the court shall grant relief from the automatic stay if (1) the debtor has no equity in the subject property and (2) the subject property is not necessary for an effective reorganization. 11 U.S.C. § 362(d)(2). The parties stipulated that the debtor has no equity in the airplane, so the only relevant issue is whether the airplane is necessary for an effective reorganization.

In support of its motion for relief from the automatic stay, Park Sterling takes the position that it is implausible to consider the airplane necessary for an effective reorganization of the debtor, because the debtor's only function is leasing construction equipment—a function that does not require air travel. Instead, Park Sterling contends that the airplane serves more as a personal luxury for Mr. Stark than a necessary business expense of the debtor. Furthermore, even if the airplane is used solely for transporting Mr. Stark to the job sites of sister corporations, Park Sterling argues that the airplane is nevertheless an unnecessary expense when the alternatives are considered. For example, project foremen are present at a majority of the job

---

13, the discussion is equally applicable to chapter 11 as well.

sites, and these individuals could be charged with the duties that supposedly require Mr. Stark's presence.

Opposing Park Sterling's motion, the debtor contends that the airplane is and will continue to be necessary for the debtor's effective reorganization. The debtor acknowledges that the airplane is used to obtain and manage jobs for the debtor's sister corporations, rather than the debtor directly. However, the debtor's sole function is leasing construction equipment to the sister corporations, making the debtor's business completely dependent on the sister corporations. Furthermore, Mr. Stark testified that the airplane is necessary for the sister corporations to serve an ever-widening geographic area. Therefore, the debtor concludes that because the airplane is necessary to the sister corporations' businesses, it is also necessary for an effective reorganization of the debtor.

Based on the evidence presented, the court finds that the airplane is necessary for an effective reorganization of the debtor. Although Mr. Stark admittedly used the airplane for personal reasons on occasion, the clear evidence is that the vast majority of the airplane's flights were for business purposes. The airplane is used by Mr. Stark to procure and maintain business for the sister corporations, which is necessary for the function the debtor's business. Furthermore, in this case, the monetary default was extraordinarily slight and all the evidence supports that the airplane has been well maintained.

## **CONCLUSION**

Based on the foregoing, the debtor's motion for contempt and sanctions for violation of the automatic stay is **DENIED**, and Park Sterling's motion for relief from the automatic stay is **DENIED**. However, the debtor must come current on all payments presently due to Park

Sterling, including payments that have come due since the airplane was seized. In addition, the debtor must pay Park Sterling $1,000.00 as reimbursement for the unpaid maintenance bill. When these certified funds are received by Park Sterling, it is to deliver the airplane—at its own expense—back to the place where the airplane was seized.

**END OF DOCUMENT**